UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION


FILED
MAR 06 2006
CLERK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| RICHARD LOUIS FRENCHMAN, JR., | CIV 03-4095 |
| Plaintiff, | |
| | MEMORANDUM OPINION |
| -vs- | AND ORDER |
| HERBERT F. SALOUM, M.D., | |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff, Richard Frenchman, brings this claim pursuant to 42 U.S.C. § 1983, claiming that Defendant, Dr. Herbert Saloum, was deliberately indifferent to his serious medical needs. During the relevant time period, Plaintiff was an inmate at the Mike Durfee State Prison ("MDSP"), in Springfield, South Dakota. Plaintiff filed several motions to compel discovery and motions for subpoenas, Docs. 51, 56, 58-60, 66 and 68 and motions to continue, Docs. 47 and 70. Defendant filed a motion for summary judgment, Doc. 39. For the reasons set forth below, the motions for discovery will be denied and the motion for summary judgment will be granted.

## BACKGROUND

Defendant is a family practice physician who provides medical treatment to inmates in the MDSP and provided medical treatment to Plaintiff. Before his incarceration, Plaintiff suffered from several health problems, including a heart condition, coronary artery disease and high blood pressure. He reported a prior myocardial infarction and placement of a pacemaker in 1997. During his incarceration, Plaintiff has been prescribed several medications for his blood pressure and heart condition. Based upon his medical history, Plaintiff has been evaluated in Health Services at the MDSP every three months for chronic care check-ups of his coronary artery disease and pacemaker. During the chronic care check-ups Plaintiff's heart and pacemaker were monitored with an electrocardiogram machine ("EKG") and chest x-rays were taken. The EKG showed normal

pacemaker functioning and the x-rays were normal. On May 21, 2002, the radiologist reading Plaintiff's chest x-ray noted cardiomegaly and left ventricular contour of the heart and recommended short term follow-up. On July 15, 2002, Plaintiff was seen in Health Services for an EKG, which was normal. Another chronic care checkup was performed on September 13, 2002. Plaintiff did not report any acute problems and stated that he used his nitroglycerin about once a week.

On November 13, 2002, Plaintiff went to Health Services reporting shortness of breath and dizziness and mentioned he had chest pain the week before but took nitroglycerin and did not report to Health Services for that pain. The next day Plaintiff was seen by Physicians Assistant Jeff Schild, with complaints of "suddenly getting dizzy and having shortness of breath. Apparently this happened several days ago when he was walking a long distance." (Med. records at 0059.) During the appointment with PA Schild Plaintiff asked whether his pacemaker could be malfunctioning but stated he was feeling fine that day. (*Id.*) Schild performed an EKG on Plaintiff and noticed on the EKG that the pacemaker spikes appeared to be missing when compared to old EKG's. (*Id.*) After consulting with Dr. Saloum, Schild placed Plaintiff on medical lay-in for the weekend, with meals to be brought to his unit and no strenuous activity. On November 16, 2002, Plaintiff notified the nursing staff that he was feeling tired, diaphoretic, dizzy, numbness and like he was going to black out. Plaintiff was then transported to St. Michael's Hospital. While under the care of Dr. Wallinga at the St. Michael's Hospital on November 17, 2002, Plaintiff's cardiac enzymes were normal, the EKG showed no changes but Dr. Wallinga still did not see pacer spikes.

On November 18, 2002, Dr. Wallinga decided to transfer Plaintiff to McKennan Hospital in Sioux Falls "due to his increasing angina-like pain." (Med. records at 0783.) On November 21, 2002, Plaintiff underwent a pacemaker replacement because his current one had either failed or was at the end of its life. The next day, he was discharged back to prison. Plaintiff's pacemaker was thereafter monitored by transtelephonic check-ups through North Central Heart. Normal pacemaker functions were noted during those check-ups. Plaintiff is no longer under the care of Defendant because Plaintiff was transferred to the South Dakota State Penitentiary in Sioux Falls, South Dakota on May 6, 2003.

## DISCUSSION

1. **Motions for Discovery**

Plaintiff moved to compel the production of documents and to subpoena records from various individuals and entities. (Docs. 51, 56, 58, 59, 60, 66, and 68.) Plaintiff's motions are untimely given that the discovery deadline expired on June 20, 2005 and the motions for subpoenas were not filed until August 2, 2005 and thereafter. The original discovery deadline was set for February 18, 2005, but was continued at Plaintiff's request to June 20, 2005. (Doc. 35.) Plaintiff has not moved for an additional continuance of the discovery deadline. Thus, Plaintiff's motions will be denied as untimely. In addition, Plaintiff has not identified any facts he could obtain through discovery that may prevent the entry of summary judgment in favor of Defendant. *See Seltzer-Bey v. Delo*, 66 F.3d 961, 964 (8th Cir. 1995) (holding that district court may rule on summary judgment motion despite pending motion to compel discovery where Plaintiff did not identify facts he hoped to obtain through discovery that would prevent entry of summary judgment against him); *Waible v. McDonald's Corp.*, 935 F.2d 924, 926 (8th Cir. 1991) (upholding the grant of summary judgment despite outstanding discovery requests because the Court could not find that the "unanswered interrogatories contained information [the Plaintiff] needed in order to adequately respond to the motion for summary judgment."). Moreover, as recognized by the Eighth Circuit, "[t]he purpose in moving for summary judgment, under the privilege of qualified immunity, is to avoid having government officers subjected to the expense and delay of discovery." *Fitzgerald v. Patrick*, 927 F.2d 1037, 1039 (8th Cir. 1991).

In his Motion to Compel, Doc. 51, Plaintiff seeks production of documents requested on May 23, 2005, July 4, 2005 and July 12, 2005. Plaintiff seeks more detailed information regarding Defendant's education; identification of individuals with knowledge regarding this case and the substance of that knowledge; identification of individuals with knowledge of any subsequent investigation; information regarding testing or inspections of the medical equipment used to care for Plaintiff; identification of any third party Defendant contends is responsible for the events in Plaintiff's Complaint; prior claims made against Defendant alleging medical negligence; an explanation for why Defendant put Plaintiff on medical lay-in over the weekend of November 16, 2002; and identification of all inmates cared for by Defendant that have pacemakers. Defendant

provided responses to Plaintiffs requests for documents and information, but Plaintiff was not satisfied with Defendant's responses. The Court finds that Defendant has responded with appropriate and adequate information and documentation to Plaintiff's requests. Thus, the motion to compel will be denied.

The roster of the guards sent to Avera McKennan Hospital, Cardiac Unit, from November 18 to 22, 2002, is what Plaintiff seeks in Document 56. He states that there are "major differences between what the Plaintiff remembers and had written in his recorded recollections, and what the hospital records indicate." In addition, Plaintiff seeks a subpoena for all operating rooms in the Avera McKennan Hospital, Cardiac Unit in Sioux Falls from November 18 to 22, 2002. (Doc. 58.) Plaintiff does not state what the discrepancies are or how they are material to Defendant's liability in this case. Defendant's liability does not depend upon what medical treatment Plaintiff received during the November 2002 hospitalization at McKennan Hospital. Rather, Defendant's liability depends upon the treatment he provided to Plaintiff preceding that November 2002 hospitalization. Thus, there is no showing of how any discrepancy between Plaintiff's notes and the medical records from his November 2002 hospitalization is relevant to Defendant's liability in this case. *See Seltzer-Bey*, 66 F.3d at 964.

In Documents 60 and 66, Plaintiff seeks a subpoena for the maintenance record of the EKG machine at the MDSP from Avera Rural Health Services for the dates from August 1999 to December 2002. The reason Plaintiff gives for requesting this subpoena is that the format of the EKG printout sheet of November 14, 2002, is different from all of the previous EKG printouts that the Plaintiff has had since August 1999, and he believes the service records would demonstrate if the EKG machine had been changed since the July 15, 2002 EKG. Even if the EKG machine had been changed, Plaintiff provides no explanation for how that would be relevant to Defendant's liability. There is no claim that Defendant had any knowledge that the EKG machine was not properly functioning but relied on it nonetheless. Thus, these motions will be denied.

In Documents 59 and 68, Plaintiff seeks to subpoena evidence from attorney Erich Johnke in Yankton, South Dakota, consisting of copies of the medical lay-in dated November 14 or 15,

2003, an original Administrative Remedy Response letter dated February 10, 2003 and copies of all of Plaintiff's prison medical records. All of Plaintiff's medical records for the relevant time period have been filed by Defendant and copies were given to Plaintiff in this litigation. The original Administrative Remedy Response is not relevant to Defendant's summary judgment motion. The Defendant is not claiming that Plaintiff failed to exhaust his administrative remedies and the Defendant is not responsible for responding to Plaintiff's requests for administrative remedies. Thus, the Court will deny the motions for subpoenas to Erich Johnke.

Plaintiff requests that the Court take judicial notice that a pacemaker is a battery-operated device and that the battery will eventually become depleted. The Court need not take judicial notice of this fact, because the record in this case shows that Plaintiff had a battery-operated pacemaker and that the battery was depleted.

2.  **Summary Judgment Motion**

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. A prisoner's allegation of inadequate medical attention was recognized as a potentially viable claim for a violation of the prohibition against cruel and unusual punishment, via a § 1983 cause of action, in *Estelle v. Gamble*, 429 U.S. 97 (1976). To state a cause of action, the prisoner must sufficiently allege "deliberate indifference" to a prisoner's "serious illness or injury." *Id.*, 429 U.S. at 105. "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.*

With regard to the "deliberate indifference" requirement, the courts have made clear that mere negligence or medical malpractice is not enough. *Id.*, 497 U.S. at 107. "The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). And, prison officials may also avoid liability if they "responded reasonably to the risk, even if the harm ultimately was not averted." *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998) (quotation marks and citation omitted). Also, "repeated negligent acts indicating systemic deficiencies in the method of providing medical care" may amount to deliberate

indifference. *DeGidio v. Pung*, 920 F.2d 525, 532-33 (8th Cir. 1990).

To prevail on a claim of deliberate indifference, a plaintiff must prove: (1) he suffered objectively serious medical needs and; (2) the prison officials actually knew but deliberately disregarded those needs. *See Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). To show deliberate indifference, the plaintiff must show prison officials "knew of, yet disregarded, an *excessive* risk to [his] health." *Logan v. Clarke*, 119 F.3d 647, 649 (8th Cir. 1997) (emphasis added, citations omitted). A prisoner's bare assertion or self-diagnosis alone, however, is insufficient to establish the existence of a medical condition. *See Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994). "When an injury is sophisticated, proof of causation generally must be established by expert testimony." *Robinson v. Hager*, 292 F.3d 560, 564 (8th Cir. 2002) (citing *Turner v. Iowa Fire Equip. Co.*, 229 F.3d 1202, 1210 (8th Cir. 2000) (holding that "[a] causal connection between an event and an injury may be inferred in cases in which a visible injury or a sudden onset of an injury occurs. However, when the injury is a sophisticated one, i.e., requiring surgical intervention or other highly scientific technique for diagnosis, proof of causation is not within the realm of lay understanding and must be established through expert testimony.") (citation omitted)). In the present case, it is clear that Plaintiff has a history of coronary artery disease and that he has a pacemaker. The proper procedure for monitoring his pacemaker, however, is a sophisticated medical question that is not within the realm of lay understanding. Thus, expert medical testimony is necessary to establish that Defendant's decision to monitor Plaintiff's heart condition and pacemaker with regular chest x-rays and EKG's put Plaintiff at an excessive risk to his health.

Also, "[c]ertainly physicians do not, and should not, necessarily accept as true the medical judgments offered by their patients. They must make treatment decisions on the basis of a multitude of factors, only one of which is the patient's input." *Givens v. Jones*, 900 F.2d 1229, 1232 (8th Cir. 1990). In *Givens*, the defendant prison doctor was granted qualified immunity even though he prescribed a drug to an inmate after the inmate claimed to be allergic to it, and the inmate claimed that as a result of ingesting the drug, he suffered tremors and seizures.

Plaintiff offers nothing more than his own opinion that Defendant did not properly monitor

his heart condition and his pacemaker. "Prisoners do not have a constitutional right to any particular type of treatment. Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996) (citations omitted). A prisoner's difference of opinion over matters of expert medical judgment or a prescribed course of treatment does not rise to the level of a constitutional violation. *See Randall v. Wyrick*, 642 F.2d 304, 308 (8th Cir. 1981). The Eighth Circuit has also noted that a prison health care system's failure to provide treatment that is "as extensive as a private health care provider" might have offered does not rise to the level of deliberate indifference. *Logan*, 119 F.3d at 650.

In this case, Plaintiff disagrees with Defendant's treatment decision to monitor Plaintiff's pacemaker and heart condition with an EKG and chest x-rays at regular intervals. Defendant, however, has not produced any expert medical evidence to support his claim that monitoring Plaintiff's heart condition with regular EKG's and x-rays put Plaintiff at an excessive risk to his health. Moreover, Plaintiff has produced no evidence to demonstrate that Defendant knew his medical treatment of Plaintiff put Plaintiff at an excessive risk to his health. There are no genuine issues of material predicate fact in this case that would prevent the entry of summary judgment on the basis of qualified immunity. Thus, Defendant is entitled to qualified immunity and summary judgment will be entered in his favor.

Plaintiff's claim could also be construed to allege Defendant was deliberately indifferent by delaying medical treatment. "When an inmate alleges that the delay in treatment is the constitutional deprivation, the objective seriousness of the deprivation should also be measured by reference to the *effect* of the delay." *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (internal punctuation and citations omitted). "'An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed.'" *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (quoting *Hill v. Dekalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994)). Plaintiff has produced no verifying medical evidence to establish the detrimental effect of any alleged delay in medical treatment by Defendant. Accordingly,

IT IS ORDERED:

1. That Plaintiff's Motions to Continue, Doc. 47 and 70, are granted to the extent that Plaintiff's time for responding to Defendant's summary judgment motion was extended to October 25, 2005.

2. That Plaintiff's Motion to Compel, Doc. 51, and Motions to Subpoena Evidence, Docs. 56, 58, 59, 60, 66, and 68, are denied.

3. That Plaintiff's Motion for Judicial Notice, Doc. 61, is denied.

4. That Defendant's Motion for Summary Judgment, Doc. 39, is granted.

Dated this ____ day of March, 2006.

BY THE COURT:

_____
Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: _____
(SEAL) DEPUTY